UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LAIBRANSY CABALLERO MEDERO, | CASE NO. C26-0568JLR |
| Petitioner, | ORDER |
| v. | |
| LAURA HERMOSILLO, et al., | |
| Respondents. | |

## I.   INTRODUCTION

Before the court is Petitioner Laibransy Caballero Medero's petition for writ of habeas corpus under 28 U.S.C. § 2241.  (Pet. (Dkt. # 1); Traverse (Dkt. # 9).)  The Government[1] opposes the petition.  (Return (Dkt. # 6).)  The court has considered the

---

[1] The Federal Respondents are Acting Director of the Seattle Field Office of Immigration and Customs Enforcement ("ICE") and Removal Operations ("ERO") Laura Hermosillo; Acting Director of ICE Todd Lyons; Department of Homeland Security ("DHS") MarkWayne Mullin; and United States Attorney General Pamela Bondi (collectively, the "Government").  (Pet. ¶¶ 18-21.)

ORDER - 1

petition, the parties' submissions, the relevant portions of the record, and the applicable law.  Being fully advised, the court GRANTS the petition.

## II.  BACKGROUND

Petitioner is a citizen of Cuba who entered the United States on September 18, 2024, at the San Ysidro, California port of entry.  (Rodriguez Decl. (Dkt. # 7) ¶ 3.)  The Government granted Petitioner parole and placed him in immigration proceedings in Miami, Florida.  (*Id*. ¶¶ 3, 4; Lambert Decl. (Dkt. # 8) ¶ 2, Ex. B (Notice to Appear).)  Petitioner's initial master calendaring hearing is scheduled for April 26, 2027, at the Miami Immigration Court.  (*See* Notice to Appear.)  The Government subsequently (1) released Petitioner from custody, (2) enrolled him in the ICE Alternatives to Detention ("ATD") program, and (3) required Petitioner to wear an ankle monitoring device and report to ICE's office in Portland, Oregon.  (*See* Pet. ¶ 3.)  Petitioner represents that, since that time, he has complied with all conditions of his release and that he does not have any criminal record.  (*Id*. ¶ 4.)  In December 2024, the Government removed Petitioner's ankle monitoring device due to his compliance.  (*Id*.)

On November 13, 2025, Petitioner filed an application with United States Citizenship and Immigration Services for lawful permanent resident status under the Cuban Adjustment Act.  (Pet. ¶ 2.)  Petitioner represents that he is *prima facie* eligible for that status and that his application is currently pending review.  (*Id*.)

On December 18, 2025, ERO arrested Petitioner allegedly for multiple ATD violations, including "missed biometric check-ins between February []4, 2025, to August 26, 2025[,]" and Petitioner's failure to be present during a scheduled home visit on

ORDER - 2

October 6, 2025.  (Rodriguez Decl. ¶ 5.)  ERO transferred Petitioner to the Northwest ICE Processing Center where he has since remained.  (*Id*. ¶ 6.)  The Government did not provide Petitioner with notice or a hearing prior to revoking his release on parole.  (*See* Pet. ¶ 6; *see generally* Return.)

On February 17, 2026, Petitioner filed the instant petition asserting that his immigration detention violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), and the Fifth Amendment's Due Process Clause.  (*See* Pet. ¶¶ 65-88.) Petitioner seeks four forms of relief: (1) an order prohibiting the Government from transferring him from the Western District of Washington without notice to and approval by the court; (2)  immediate release from custody; (3) an order prohibiting the Government from re-detaining him without first holding a hearing before a neutral decisionmaker at which the Government bears the burden of showing flight risk or danger to the community by clear and convincing evidence based on changed circumstances; and (4) an award of attorneys' fees and costs under the Equal Access to Justice Act.  (Pet. at 24.)  Briefing is complete and the petition is ripe for the court's review.

### III.    ANALYSIS

The court addresses each of Petitioner's requests for relief in turn.

**A.     The Government's Continued Detention of Petitioner is Unlawful**

The INA permits detention of noncitizens present in the United States during immigration proceedings.  8 U.S.C. §§ 1225(b), 1226(a), 1226(c), 1231(a).  Although § 1225(b) requires mandatory detention for certain noncitizens "seeking entry" into the

ORDER - 3

United States, *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018), all persons, regardless of their immigration status, are entitled to due process under the Fifth Amendment, *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent."). Thus, even when the government believes it has a lawful basis for detaining a noncitizen, it remains subject to the requirement to effectuate that detention in a manner that comports with due process. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1320 (W.D. Wash. 2025) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.") (citing *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)).

The Parole Statute provides the Secretary of Homeland Security discretion to grant parole on a case-by-case basis for "urgent humanitarian reasons or significant public benefit [.]" 8 U.S.C. § 1182(d)(5)(A). When the Secretary grants a noncitizen entry to the United States on parole, such:

> [r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk. Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk, or is now subject to a final order of removal.

*Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

ORDER - 4

DHS's decision to revoke a noncitizen's parole under § 1182(d)(5)(A) must be made on an individualized basis and carried out only after the purposes of the parole have been served. *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1138 (D. Or. 2025) ("Common sense suggests . . . that parole given only on a case-by-case basis is to be terminated only on such a basis.") (citation omitted); *see also* 8 U.S.C. § 1182(d)(5)(A) (stating that once parole is granted, DHS may only terminate parole "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served").

Here, the court concludes that the Government (1) revoked Petitioner's parole and brought him into federal custody without adequate consideration of individualized facts and circumstances, including the absence of changes that justify revocation of his parole, and (2) re-detained him without the lawful authority of persons authorized to revoke his release or the minimum amount of process due, both of which violate his rights under the Fifth Amendment.

First, as to Petitioner's individualized circumstances, the Government does not contest that Petitioner has no arrests or criminal history in the United States. (Pet. ¶ 4; *see generally* Return). Furthermore, although the Government alleges that it revoked Petitioner's release because he failed to complete biometric check-ins and be present for a home visit, the Government has adduced no evidence by which the court may evaluate such claims. (*See* Rodriguez Decl. ¶ 5 (generally describing Peititoner's alleged ATD violations).) Indeed, Petitioner contests the validity of the Government's claimed ATD violations and, in light of the Government's decision to remove Petitioner's ankle

ORDER - 5

monitor in December 2024, the court concludes that the Government fails to establish the sufficiency of such claims.  (*See* Pet. ¶ 4.)

Second, as to Petitioner's due process rights, the Government's conduct is deficient in several ways.  As an initial matter, the Government does not assert that it revoked Petitioner's parole because the DHS Secretary determined that the purposes of the parole have been served.  (*See generally* Return.)  Additionally, given the total absence of a pre-deprivation notice and hearing, it is clear that the Government did not provide the minimum amount of process constitutionally due.

Because Petitioner challenges an administrative action depriving him of his liberty, the parties agree that the *Mathews* balancing test applies here.  (Pet. ¶¶ 24-30; Return at 6-8.)  The *Mathews* test determines whether an administrative procedure provides the process constitutionally due and weighs three factors: (1) the petitioner's private interest, (2) the risk of an erroneous deprivation, and (3) the Government's interest.  *See Mathews*, 424 U.S. at 335.  In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that the *Mathews* test applies in "the immigration detention context."  53 F.4th 1189, 1206-07 (9th Cir. 2022).  District courts in this Circuit have applied the *Mathews* test in similar circumstances since then.  *See, e.g.*, *Torres v. Hermosillo*, No. C25-2687LK, 2026 WL 145715, at *6 (W.D. Wash. Jan. 20, 2026); *Sira-Hurtado v. Hermosillo*, No. C25-2173KKE, 2025 WL 3294986, at *2 (W.D. Wash. Nov. 26, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

The court agrees with Petitioner that the *Mathews* test compels a finding that due process required the Government to provide notice and an opportunity to respond *before*

ORDER - 6

he was deprived of his liberty.  (Pet. ¶ 32.)  In so holding, the court adopts the reasoning set forth by the Honorable Kymberly K. Evanson in *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316 (W.D. Wash. 2025) and finds (1) Petitioner's interest in not being detained is "the most elemental of liberty interests[,]" (2) the risks of erroneous deprivation of liberty are high, and (3) the Government's interest in arresting and detaining a noncitizen without a hearing is low where the noncitizen was previously released.  *Id*. at 1320-24 (citation omitted).  Therefore, the court concludes that the *Mathews* factors weigh in Petitioner's favor and his re-detention without a pre-deprivation hearing violated his due process rights.

Finally, the Government raises a jurisdictional challenge to the court's ability to consider Petitioner's APA claim.  (Return at 8-10.)  The Government's arguments are nearly identical to those raised by the Government in *Abadin v. Noem*, No. C25-2411JLR-SKV, 2026 WL 217148, at *3 (W.D. Wash. Jan. 28, 2026), in which the Government asserted that the petitioner was subject to mandatory detention and that the court lacked subject matter jurisdiction over his APA claim.  In *Abadin*, this court rejected the Government's narrow reading of the APA and, instead, held that "Congress explicitly authorized judicial review of final orders concerning 'all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States' for noncitizen detainees[.]"  *Abadin*, 2026 WL 217148 at *3 (citing 8 U.S.C. § 1252(b)(9)).  The court reiterates its reasoning in *Abadin*, and, finding that it has jurisdiction to consider Petitioner's APA claim, concludes that the Government's

ORDER - 7

decision to re-detain Petitioner (1) constitutes an abuse of DHS's discretion, and (2) violates the APA's prohibition on agency action that is "not in accordance with law[.]" 5 U.S.C. § 706(2)(A).  Consequently, the court sets aside the Government's decision to revoke Petitioner's parole, which was effectuated by his arrest on December 18, 2025.  (*See* Rodriguez Decl. ¶ 5.)

**B.      The Court Grants Petitioner's Requests for a Permanent Injunction.**

In addition to his immediate release, Petitioner requests an injunction prohibiting his re-detention absent a pre-deprivation hearing before a neutral decisionmaker at which the Government bears the burden of showing by clear and convincing evidence based on changed circumstances that Petitioner is a flight risk or danger to the community.  (Pet. at 24.)  The Government asserts that Petitioner does not adequately plead such relief and that his assertions are "speculative at best."  (*See* Return at 2.)  Having found that the Government violated Petitioner's due process rights, the court further finds that issuing injunctive relief is appropriate.

The court may provide injunctive relief if Petitioner meets the standard for a permanent injunction.  "According to well-established principles of equity, a [petitioner] seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  Petitioner must demonstrate: (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between him and the Government, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a

ORDER - 8

permanent injunction. *Id*. (citations omitted). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 15 (1971); *see also Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 861 (9th Cir. 1992) ("Federal courts possess whatever powers are necessary to remedy constitutional violations because they are charged with protecting these rights.") (citations omitted).

First, Petitioner has suffered irreparable harm, and such harm is likely to recur absent injunctive relief to protect against further constitutional violation. Specifically, the Government has already detained him without due process and identified him as a target for detention. Despite this court's many orders holding that the Government's conduct in revoking parole and re-detaining noncitizens without due process is unconstitutional, the conduct has continued. Thus, absent injunctive relief, Petitioner may be subject to the same violative conduct again. The other *eBay* factors similarly favor injunctive relief. Monetary damages are an inadequate remedy for deprivation of liberty; requiring the Government to follow constitutional procedures imposes no undue hardship, and the public interest favors compliance with the law. *See Palacios*, *v. Hermosillo*, No. C26-491JNW, 2026 WL 686138, at *10 (W.D. Wash. Mar. 11, 2026) (so holding). Courts in this district routinely grant such relief under comparable circumstances. *See id*. (compiling cases in this District so holding).

For the foregoing reasons, the court finds that Petitioner is in custody in violation of the Constitution of the United States. Petitioner must be released and may not be

ORDER - 9

re-detained without a hearing before an immigration judge. The Government is enjoined from re-detaining Petitioner absent clear and convincing evidence that Petitioner is a flight risk or danger to the community.

Because the court orders Petitioner's immediate release and requested injunction, it declines to also issue an order prohibiting the Government from transferring him from the Western District of Washington without notice to and approval by the court.

**C.      Request for Attorneys' Fees and Costs.**

Petitioner's request for fees should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

## IV.      CONCLUSION

Accordingly, the court orders as follows:

(1) The petition for a writ of habeas corpus (Dkt. # 1) is GRANTED;

(2) Respondents SHALL release Petitioner Laibransy Caballero Medero from detention within FORTY-EIGHT (48) hours pursuant to the conditions of his most recent release on humanitarian parole;

(3) Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them SHALL NOT re-detain Petitioner until after an Immigration Court hearing is held (on adequate notice) to determine whether detention is appropriate, or until Petitioner is issued a final order of removal;

ORDER - 10

(4) Within SEVENTY-TWO (72) hours of this Order, Respondents SHALL file with the court a status report confirming that Petitioner has been released from custody and informing the court of the date and time of his release.

Dated this 1st day of April, 2026.

JAMES L. ROBART
United States District Judge

ORDER - 11